**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE COURTYARDS AT PRAIRIE FIELDS CONDOMINIUM ASSOCIATION,<br><br>    Plaintiff,<br><br>    v.<br><br>WEST BEND MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:22-cv-04854<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

In this insurance contract dispute, Plaintiff The Courtyards at Prairie Fields Condominium Association filed a single-count amended complaint against its insurer West Bend Mutual Insurance Company for breach of contract [9]. Defendant moves for judgment on the pleadings pursuant to Rule 12(c), arguing that a prior appraisal award precludes Plaintiff's claim [18]. For the reasons stated below, the Court grants Defendant's motion.

**I.  Factual Background**

Plaintiff manages the properties located at 102-104 Essex Lane, Savoy, Illinois 61874 (the "Property"). [9] ¶ 6. In June of 2020, Plaintiff contracted with Defendant West Bend Mutual Insurance Company for property insurance coverage for a term of one year. *Id.* ¶ 7.

In July of 2020, Plaintiff filed a claim with Defendant for damage sustained to the Property's roof and other building components as a result of wind and hail. *Id.* ¶

1

9–10. Upon investigating the claim, Defendant estimated that the replacement cost for the damage was $60,989.54, and it paid Plaintiff $50,989.54, subtracting $10,000 for the policy deductible. [16] ¶¶ 3–4. Plaintiff believed that the damage to the roofs of its buildings was so severe that the damaged roofs needed to be replaced completely, which Plaintiff estimated would cost $1,389,600. *Id.* ¶ 5. Pursuant to the insurance policy issued by Defendant, Plaintiff demanded an appraisal of the damage. *Id.* ¶ 8

The appraisal provision of the insurance policy provides:

**2. Appraisal**

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

[13-1] at 54–55.

In accordance with the above provision, each party hired its own appraiser, and the appraisers then jointly selected an umpire. [16] ¶¶ 8–10; [13-2]. The parties' appraisers failed to reach agreement on the amount of the loss. *Id.* ¶ 11. The umpire subsequently proposed an appraisal in the amount of $123,252.09, which both he and Defendant's appraiser signed on April 18, 2022. *Id.* ¶ 12; [13-4]. After receiving the

umpire's findings, Defendant paid Plaintiff $62,262.55, the difference between its initial determination and the umpire's appraisal amount. *Id.* ¶ 14.

On August 3, 2022, Plaintiff filed a complaint for breach of contract [1], which it amended on September 28, 2022 [9], alleging that Defendant failed to adequately compensate Plaintiff for the damage caused to the Property. Defendant now moves for judgment on the pleadings [18].

## II.   Legal Standard

A party may move for judgment on the pleadings after "the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Courts apply the same standard to a Rule 12(c) motion that applies to a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (quoting *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). Under that standard, the plaintiff's complaint must contain a "short and plain statement of the claim" sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).

On review of a Rule 12(c) motion, courts construe all well-pled allegations as true and draw all reasonable inferences in the non-moving party's favor. *Hayes*, 670 F.3d at 813. Courts "are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported

3

conclusions of law." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). In considering the motion, the Court looks only to the pleadings, which "include the complaint, the answer, and any written instruments attached as exhibits." *Id.* at 452.[1]

### III. Analysis

Plaintiff argues that the appraisal award agreed to by the umpire and the Defendant's appraiser is not binding because the language in the appraisal provision is not sufficiently clear and unambiguous to constitute a waiver of Plaintiff's right to sue. This Court disagrees. Consistent with Illinois law, the language in the appraisal provision clearly and unambiguously binds the parties to the appraisal conducted pursuant to the terms of the policy. Plaintiff also argues that the appraisal provision lacks mutuality and should be void as a matter of public policy. This argument has no basis in law. Accordingly, Defendant is entitled to judgment on the pleadings.

#### A. **Breach of Contract**

Under Illinois law,[2] courts apply general rules of contract construction to the interpretation of insurance policies. *DeGroot v. Farmers Mut. Hail Ins. Co. of Iowa*, 643 N.E.2d 875, 876 (Ill. App. Ct. 1994). Thus, in Illinois, a waiver of a party's right

---

[1] In deciding Defendant's Motion for Judgment on the Pleadings, the Court considers the First Amended Complaint [9], Defendant's Answer, Affirmative Defenses, and Counterclaim [13], and Plaintiff's Reply to Defendant's Affirmative Defenses and Plaintiff's Answer to Defendant's Counterclaim [16].

[2] Because this is a diversity suit brought in Illinois and the parties agree that Illinois law governs, the Court applies Illinois substantive law. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985)); *see also Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000).

4

to sue pursuant to an appraisal provision is only valid if it is "clear and unambiguous" that a party "is giving up his right to file suit by seeking an appraisal." *Id.*; *see also Stratford W. Homeowners Ass'n v. Country Mut. Ins. Co.*, 788 N.E.2d 342, 343–44 (Ill. App. Ct. 2003) ("Any waiver of the right to file suit must be clear and unambiguous.").

The insurance policy's appraisal provision instructs that the decision agreed to by any two appraisers remains binding. [13-1] at 54. Other courts in this district have held that this language clearly and unambiguously waives a party's right to bring suit based upon the appraisal determination. The court in *70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, analyzing identical language in an appraisal provision, found that the use of the word "binding" "made it sufficiently clear and unambiguous" to the plaintiff that, "by participating in this process, it foreclosed its opportunity to litigate the amount" the defendant owed it for damage to the building covered by the insurance policy. No. 16-cv-07723, 2016 WL 6582583, at *4–*5 (N.D. Ill. Nov. 7, 2016). Analyzing the same language, the court in *MSPPR, LLC. v. West Bend Mut. Ins. Co.* held that, under the clear terms of the policy, "the umpire's decision is binding. Because the parties agreed to a binding appraisal process to resolve disputes regarding the amount of loss, I defer to the umpire's determination of MSPPR's losses." No. 21 CV 5362, 2022 WL 1129221, at *4 (N.D. Ill Apr. 15, 2022) (citation omitted).

In opposing Defendant's motion, Plaintiff cites *Stratford* to suggest that the language in its policy provision falls short of a clear waiver. But Plaintiff's reliance on *Stratford* is misplaced. The language in *Stratford* is distinguishable from the

5

language in Plaintiff's policy—and the language in *70th Ct. Condo* and *MSPPR*—in that it does not provide any indication that the appraisal process is binding on the parties. *Stratford*, 788 N.E.2d 342, 343–44 (Ill. App. Ct. 2003). The court in *70th Ct. Condo* explicitly drew a distinction between the non-binding language in *Stratford* and the binding language in its own case—which mirrors the language in Plaintiff's policy—finding that "an appraisal clause that explains the mechanics of how an umpire and the appraisers are selected and how they may reach an agreement, but that only states that an agreement signed by two of those three 'will set the amount of loss,' does not make evident to the parties that such a decision will be irrevocable." 2016 WL 6582583 at *4 (citing *DeGroot*, 643 N.E.2d at 876).

Despite this distinction, Plaintiff likens its own appraisal provision to the language in *Stratford*, noting that its policy makes "no mention of the word 'waiver' or 'court' or even a 'lawsuit.'" [20] at 6. But Illinois law does not mandate the use of these specific words to make the appraisal provision binding. To the contrary, Illinois courts have held that the word "binding"—which does appear in Plaintiff's appraisal provision—is sufficiently clear and unambiguous to constitute a waiver of a party's right to sue. *See 70th Ct. Condo Ass'n*, 2016 WL 6582583, at *4–*5; *MSPPR*, 2022 WL 1129221, at *4.

Plaintiff argues that the appraisal provision is nonetheless non-binding because it later states that if there is an appraisal, "we [*i.e.* Defendant only] will still retain our right to deny the claim." [20] at 5. Plaintiff interprets this language to mean that, if Defendant can deny the claim, then the appraisal cannot be binding.

6

[20] at 6. Plaintiff misinterprets this language, conflating "claim" with "appraisal." The contract between the parties makes clear that an appraisal is limited to the valuation of the loss. *See* [13-1] at 54; *see also Kinkel v. Cingular Wireless, LLC,* 828 N.E.2d 812, 816 (Ill. App. Ct. 2005). The appraisal does not "answer questions of contract interpretation" or address any number of legal or factual disputes that may give rise to a claim based on Defendant's denial of liability. *See Kinkel*, 828 N.E.2d at 817. The binding appraisal provision simply means that "the insurer may still object to liability, but cannot object to the amount assessed by the appraisal process." *CenTrust Bank, N.A. v. Montpelier U.S. Ins. Co.*, No. 12-cv-9233, 2013 WL 1855838, at *2 (N.D. Ill. May 1, 2013).

Contrary to Plaintiff's claim, the appraisal provision does not allow Defendant to deny the claim if it does not approve the appraisal outcome, [20] at 7; rather, the appraisal provision makes clear that the determination of an appraisal amount under that provision will not impact Defendant's right to deny a claim under the terms of the insurance policy. [13-1] at 25. In other words, submitting to a binding appraisal process does not foreclose Defendant from denying the claim based upon the provisions of the insurance policy, just as submitting to the binding appraisal process does not foreclose Plaintiff from bringing suit based upon an improper denial of Plaintiff's claim. It does, however, preclude either party from filing suit on the grounds that it disagrees with the outcome of the binding appraisal process, which is the underlying basis of Plaintiff's first amended complaint.

### B. Mutuality

Alternatively, Plaintiff argues that the appraisal provision is void as against public policy because only Defendant retains the right to deny a claim. In support of its argument, Plaintiff cites three Illinois appellate court cases finding trial *de novo* provisions of contracts void for public policy reasons because the provisions lacked mutuality. *See Samek v. Liberty Mut. Fire Ins. Co.*, 793 N.E.2d 62 (Ill. App. Ct. 2003); *Parker v. Am. Fam. Ins. Co.*, 734 N.E.2d 83 (Ill. App. Ct. 2000); *Fireman's Fund. Ins. Cos. v. Bugailiskis*, 662 N.E.2d 555 (Ill. App. Ct. 1996). As an initial matter, the Illinois Supreme Court overruled all three of these cases, and they are no longer good law. *See Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 656 (Ill. 2011).

Even if these cases were upheld, they lend no support to Plaintiff's argument. The issue in *Samek*, *Bugailiskis*, and *Parker* involved a specific provision included in auto insurance policies that allowed either party to reject an arbitration award and demand a trial if the award was higher than the minimum limit for liability under Illinois statute. Thus, the provision favored the insurers because the arbitration award was binding if it was small but non-binding if it was large. *See Rosen*, 949 N.E.2d at 648–50. At the outset, the Illinois Supreme Court acknowledged that Illinois courts have "a long tradition of upholding the right of parties to freely contract," *id.* at 645 (citing *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E. 2d 85 (Ill. 2006), and "the power to declare a private contract invalid on public policy grounds is exercised sparingly." *Id.* (citing *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 828 N.E.2d 1175 (Ill. 2005)).

The arbitration provision at issue in those cases implicated "several public policies" that were expressly addressed by the Illinois legislature, including statutes regarding under-insured motorists and the enforcement of arbitration provisions. *Id.* at 645–46. Unlike the provisions in those cases, Plaintiff has not demonstrated that the appraisal provision in its insurance policy implicates any public policy concerns or that "the agreement is so capable of producing harm that its enforcement would be contrary to the public interest." *Id.* at 644 (quoting *In re Estate of Feinberg*, 919 N.E.2d 888, 894 (Ill. 2009)).

Setting aside Plaintiff's failure to meet the high burden required to void a contract on public policy grounds, the provision at issue does not lack mutuality. As previously discussed, the appraisal provision equally binds both parties as to the value of the appraisal, and Defendant's retention of the right to deny a claim under the policy does not affect the binding nature of this appraisal. *See CenTrust Bank*, 2013 WL 1855838, at *2. ("[T]he appraisal clause at issue is not void for lack of mutuality of obligation simply because of a retained rights clause."). Because the appraisal clause equally binds both parties, there is no basis to void the contract.[3]

---

[3] Illinois law also recognizes a doctrine of mutuality as a matter of contract interpretation. *See Carter v. SSC Odin Operating Co., LLC*, 976 N.Ed.2d 344, 351 (Ill. 2012). Plaintiff does not explicitly address this doctrine, but to the extent Plaintiff's argument relies upon it, it also provides no basis to void the contract for the same reasons stated herein. *See id. (quoting Armstrong Paint & Varnish Works v. Continental Can Co.*, 133 N.E. 711, 714 (Ill. 1921)).

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Judgment on the Pleadings [18] and directs the Clerk to enter judgment in Defendant's favor on Plaintiff's complaint.

Dated: September 22, 2023            Entered:

                                                   John Robert Blakey
                                                   United States District Judge